Please come to 312-1041 Robert Bush Apartment at Lloyd Brooks v. Central Mortgage Company after reading by Liz Minetti. Mr. Brooks? Yes. Welcome. May it please the court, my name is Lloyd Brooks. I am the attorney for Mr. Robert Bush and I will be arguing on his behalf this morning. This case, I'm sure the justices have all read the briefs, has a very long procedural history to it with lots of twists and turns, but ultimately there are just a few simple questions that I think, if answered, actually resolve this appeal. I think what we start off with is going way back to the fairly beginnings of this case when Mr. Bush sought to obtain counsel to assist him with the matter that clearly was beyond his reach. And counsel appears and does what most counsel would do when the pro se party has done something in a case before they have shown up, is seek to amend the pleadings to more accurately describe what the claims and defenses should be. Here, the trial court denied leave to counsel to file that amended pleading, despite the fact that the trial court had not long before that actually given leave to the pro se party to file just that pleading. And I think if we step back and look at that action, we kind of avoid so many of the other things that occurred later on. Why is that? Because if the trial court had granted leave to file that amended pleading… And this is in the foreclosure case? Correct, in the foreclosure case. Only in 10 CH 5616? 5616, correct. It was the first of the three lawsuits to be filed. Had that happened, and it's our position that the trial court actually abused its discretion in refusing to let it happen, then a lot of the arguments actually raised by Central Mortgage later on to the second, or actually be the third of the three lawsuits, and here now on appeal, actually would never have come in the first place. Because many of those objections now make the argument that, well, there's something untimely about Mr. Bush's claim. When he was granted, when Bush was granted leave to file an amended complaint, it was given 28 days. That is correct, Your Honor. It was on 28 days before. He did, he did. It was an amended answer, I think. That is correct. He filed an answer that contained defenses… Amended pleading. Correct. Those defenses, which included, by the way, a defense of his request to rescind the loan under the Truth in Lending Act, which was acknowledged by Central Mortgage's counsel at the oral argument on that motion, that in fact Mr. Bush was attempting to rescind his loan, but they felt that he didn't allege sufficient facts to do so. Approximately a week and a half after the deadline that the trial court gave Mr. Bush, my firm filed its appearance, along with the motion seeking a little additional time to get that amended pleading on file. The trial court hears that motion and denies it without prejudice, essentially asserting, well, where is this amended pleading? I'd like to see it. Fourteen days afterwards, the amended pleading, the proposed amended pleading, is filed along with a motion for leave to file it in standard. That is the motion that has ultimately been denied by the trial court. The arguments made by Central Mortgage at that point mostly were centered upon what I consider a futility argument, if you will. I'm sure the Court is well aware that that's one argument that can be made against the filing of an amended pleading, is that whatever claims or defenses are found in that pleading won't cure the defect and therefore it's futile to allow it to be filed. You challenged standing in the amended pleading, did you not? I believe one of the defenses… Standing as Central Bank to proceed. I believe that that was one of the proposed defenses, and it probably was done more along the lines of denying their allegation that they had capacity in the Illinois mortgage foreclosure law. There's a requirement that the plaintiff plead a set of facts showing that it has the capacity to foreclose in the first place, and that that was an allegation that we would have denied. Your amended answer said Bush has insufficient information to either admit or deny. Correct, because Central Mortgage was not the lender who made the loan, and as a result we have no basis to just simply accept it because they sued and they must now have some… What did the court say about that? Well, Your Honor, there was no specific addressing of the change of the answer, and it's interesting that you bring that up. The focus seemed to be on Central Mortgage's objection to us filing the counterclaim that was attached to that amended answer. The court never really addressed that, but it denied the motion in total, so we were forbidden from filing any part of that proposed pleading, even though Central Mortgage's objection didn't really focus on it. Let me ask you though, when you started out we were talking about timeliness, and when the court ultimately denied the lead to file in Stander, and that's after you attached the proposed pleading, it wasn't denied because it was late. I mean, he denied your motion to file because he said this stuff isn't going to help him. Well, the record, the trial court's responses at that hearing aren't entirely clear as to what he was focused on. Certainly Central Mortgage's argument was, oh, these aren't going to help, they're insufficiently pledged, you've already denied the Teal claim once, this isn't appropriate. The trial court's comments at the hearing seemed to be focused a little bit on the timing of proposing the amended pleading. So in our briefs, we kind of address it from both angles, that from a prejudice standpoint, which is really what the timing should have been focused on, there was none. We were at the very beginning of the case. My client had been given leave. Yes, this was not strictly within the time originally granted, but it was very shortly thereafter. There's no surprise here because Central Mortgage itself acknowledged that the original pleading was attempting to do what this one was seeking as well. Right, but he doesn't have to give you leave to file a defective pleading, right? I mean, that's the reason you attach it. That's the reason you're going to be required to attach a pleading to a petition or motion for leave to file, right? So you can see what is it you want to file. And that is absolutely correct, Justice Smith. And again, that is why we also attack that angle in our briefs as well. There was nothing defective about that proposed pleading. The largest objection made by Central Mortgage here right now is kind of a timeliness argument. Again, there was nothing untimely, and I'll go through that briefly for you. My client on three separate occasions submitted written notice to Central Mortgage that he was seeking to elect to rescind this loan. And notably, the very first one was long before the foreclosure had been filed. He notified Central Mortgage that he wanted to unwind this mortgage because of the TIFA violations. Central Mortgage, instead of honoring that request, decided to foreclose instead, which in and of itself is a violation, and I'll come back to that in a moment. So we've got timely election. My client's amended – I'm sorry, my client's answer that includes this request for rescission was also filed within three years of the loan. So there's no timeliness problem. The fact that we're seeking to amend the complaint doesn't change that analysis. I'm sure Your Honors are well aware of statute of limitations issues are determined from the filing of the complaint, the initial request for relief, not an amendment to that. So the fact that we now sought to file an amended pleading to beef up his TILA claim, so to speak, doesn't change the fact that his original pleading was timely. The damage claim, which is a slightly separate analysis because there's a different statute of limitations that covers it. There's only a one-year statute of limitations there. However, that one-year statute of limitations expressly contains within it a recoupment provision that says regardless of this one-year statute of limitations, if the claim is brought in defense, then there is no statute of limitations. So even my client's damage claim was timely. So now I'd like to go back to the failure to honor his election for a moment. That claim was never addressed by the trial court because the original proposed amendment, there wasn't such a request made at the time. When the separate TILA action was filed, that was included in the separate TILA case, that there were also now damages to my client because Central Mortgage was ignoring his request to rescind the loan, the largest of which is the actual foreclosure case itself. And this case law in our briefs cited that the filing of the mortgage foreclosure case itself violated TILA because they were ignoring his prior request to rescind the loan. As a result, whatever injuries my client incurred, including paying my firm to defend that mortgage foreclosure, were actual damages now. That occurred less than a year before the filing of that separate TILA claim, well within the one-year statute of limitations. Again, not addressed by the trial court. So the TILA claims, I don't think there's a serious argument that can be made that they somehow were defective. There are numerous TILA violations alleged, there are three to be exact. The first was that at the closing of his loan, my client was required to sign a document swearing he wouldn't rescind the loan at the closing. Complete violation of TILA. The one guarantee that most people are probably familiar with anything about TILA is you get this three-day cooling off period. You're not allowed to interfere with that. There are cases cited in the briefs that make it clear. Signing this kind of an acknowledgment at the closing violated my client's right to have those three days. The second problem, all the documents from the closing were kept by the closing. And he could not have any of them, which included the truth in lending disclosures that were at that closing for four days. Again, his right to cancel now has expired, and now you deliver to him the very disclosures that the law was attempting to guarantee he'd have a chance to review for those three days. That's the second violation. Once he gets the documents, he determines that all the disclosures he was entitled to weren't found within those documents. So there are three separate violations. Any one of them guaranteed my client his right to rescind the loan. How many years later can you exercise that right to rescind? Somebody didn't give you – so you don't get your notice under TILA that you've got a right to rescind within three days. How many years later can you exercise that option if there's been a TILA violation? The law locks you in to elect to rescind the loan regardless of the violation for three years. So regardless of when you determine that the violation occurred, you've got up to three years from the consummation of that loan to notify the lender that you're electing to rescind that loan. That occurred here in more than one instance. My client sent his own notice. When he retained my services, I sent one. And then the third notice was actually the motion for leave that was filed by my office. It contained another notice to Central Mortgage that we were electing to rescind this loan. So you have three separate elections. All three occurred within the three-year period. When did you give notice to Central that you were going to rescind the loan? My client did so, and I do not have the exact dates before me, but they are cited in the factual record in my brief. He sent his own notice several months before the foreclosure was instituted. Okay, because Central wasn't assigned or didn't get the assignment until August 26th of 2010. The foreclosure started September 13th. I apologize for cutting you off, Your Honor. What happens in many of these cases is the servicer of the loan has contacted the borrower years. Who cares? Until there's an assignment, the borrower can ignore that. That may be true, but for purposes of notice, TILA permits the borrower, if they don't know who the owner of the loan is, to send that notice to the person demanding payment. And that, in this case, was Central Mortgage. So Central Mortgage— Central Mortgage couldn't demand payment until they had the assignment, which started August 26th. But if they're the person who's sending monthly statements to my client saying, we are the person who's been designated to collect the payments, and this is the way it's generally done. MERS was designated to collect under the mortgage agreement, and the note says that the original bank is the lender. So, I mean, there's some case law that says MERS could file a foreclosure action, but I think your amended answer was on the right track that, hey, Central doesn't have standing here.  Central did not become the note holder. The bank held the note. If you look at the note, the bank doesn't give MERS a right to keep the payments. So anyway, none of that was ever addressed. It was not, and we did raise some issues with whether or not Central Mortgage proved up its allegations of capacity. But trying to get a connection to the TILA issue here, MERS becomes somewhat of a non-issue for purposes of notice because under the mortgage, they've got control of the security interest. So certainly they would potentially have grounds to file a foreclosure in certain circumstances. But here, for purposes of the TILA election, the servicer of the loan can take the shoes of the lender, whoever that might be, for purposes of notice. And that's why Central Mortgage got the original notice. Now, had we been able to develop all of this at trial, who knows what would have come of it, but we did not, which dovetails down to the second issue that I have with the trial court, is the granting of summary judgment to Central Mortgage. One of the things that occurred here is Central Mortgage had obtained summary judgment. We moved to reconsider that based on the fact that we thought there were a number of issues that the trial court didn't sufficiently address. The trial court actually granted that motion to reconsider and kind of reset the parties and said, okay, start that over. Immediately, we issued discovery requests to Central Mortgage addressing the issues that the trial court felt had not been handled appropriately the first time around. Central Mortgage responds to those discovery requests, what you want to call it, they did a response, mostly with objections to relevancy. One of the key things they did not do was identify any witnesses and identify very few documents in response to those discovery requests, essentially saying we don't know of any witnesses, we don't have any documents. Now, shortly thereafter, the records there, I believe it's about two weeks later, there's their motion for summary judgment being presented to the trial court, and lo and behold, there are affidavits from witnesses who are claiming to have relied on documents that we don't have. In response to that, we object to the trial court that these witnesses should not have been permitted to be used at summary judgment because they weren't disclosed. The trial court overrules this objection and permits them to use it. And our central problem here is that's a clear violation of Rules 213G and 213I. They had a duty to disclose witnesses who were going to offer opinions, which their affiance did about reliability of their software and computers and such. And also because this came after they had done a discovery disclosure, 213I required them to notify us that they needed to identify witnesses. They didn't either. The Supreme Court's made quite clear that Rule 213G and I in particular are mandatory, and the discovery's not to be used for gamesmanship. And I would posit to the court that that's what happened here, is that the discovery responses were used in a gamesmanship-like manner. They knew they were moving for summary judgment, and in fact, one of the affidavits, at least, was file stamped by the clerk of the court on a date that was before discovery responses. So clearly they knew they had witnesses. They just were not going to disclose them, and unfortunately, the trial court permitted this to happen and granted summary judgment based on the affidavits from these witnesses, which were clearly not disclosed. I think what you're going to hear from central mortgage is somehow Illinois Supreme Court Rule 191 protects them because my client was somehow required to fill out an affidavit complaining about what they did beforehand. I think if you look at the rule, it's clear that Rule 191B is a permissive rule that would allow that as one avenue to ask the court not to enter summary judgment, but it's not required. However, compliance with Rule 213G and I is mandatory, and the Supreme Court's made clear that striking the evidence or testimony from any such violation is the appropriate remedy, which is what we asked for before the trial court. Judge Siegel overruled that objection and did not strike those affidavits. Had he stricken the affidavits, which was their only evidence for summary judgment, they should have denied that motion and then permitted the case to go forward as it should have, which would have been with them disclosing these witnesses and then allowing discovery to be completed, because clearly they were withholding discovery from Mr. Bush. And I'll reserve whatever time I have for it. Thank you, Mr. Brooks. Mr. Manetti. May it please the Court, my name is Lou Manetti. I represent Plaintiff Appelee Central Mortgage Company. Most of the points raised by defendant are issues in an entirely separate lawsuit that can't be bootstrapped into this one. I'd like to highlight some facts briefly that were absent from defendant's analysis. Defendant didn't send plaintiff any communication that could be fairly characterized as a rescission under the TILA. Who slinked it, Central Bank? Central Mortgage Company, Your Honor. Why should he have sent it to Central Mortgage prior to August 26th? Your Honor, I don't believe, I guess my argument isn't that the sending of it to Central Mortgage was improper. And again, the record doesn't reflect at what point Central Mortgage Company took over servicing rights from Taylor Bean and Whitaker. But regarding the... Well, the mortgage nominates MERS to do that. Yes, Your Honor. And MERS didn't assign their rights as nominee to Central Bank until August of 2010. Your Honor, regarding any standing issue, I believe that would be waived. It wasn't raised in the briefs. It was in the answer. It was in the amended answer, but they weren't allowed to file it. Yes, Your Honor. And again, I would note if there's any issue about Central Mortgage Company standing here, they attached the note, endorsed in blank, to the complaint. Recent case laws such as Parkway Bank v. Korsen and Roleston Investments v. Garner would lead to the conclusion that the attachment of the note properly established Central Mortgage Company as the plaintiff here. The attachment of the note? Yes, to the complaint. It was endorsed in blank from Taylor Bean and Whitaker. Okay, go ahead. So, Your Honor, the... You're arguing that part of the arguments are dealing with CH-2758, which the 304A doesn't deal with. Precisely, Your Honor. The cases when... That's the claim for rescission and the denial of the re-hearing are to grant that. Yes, and the damages claim, Your Honor. When... Excuse me. When the defendant came into court on his motion for leave to file an amendment of pleading when counsel did, they acknowledged on that hearing date that they couldn't show good cause for why the defendant failed himself to re-plead in the time provided.  I don't have a response to that, Your Honor. And given that, and given the arguments made by the plaintiff that this wouldn't cure the defect anyway, the circuit court denied that motion to amend. Facing this, the defendant went and filed a TILA action and consolidated it with this foreclosure action, which, again, I submit is the only case of the three that's properly before this court, only the orders from that case are before this court. Well, the 304A only dealt with the one action, correct? Correct. The foreclosure. Yes. The only order which contains Rule 304A language is our order for judgment for foreclosure and sale. So the defendant consolidated the foreclosure case with his own newly filed TILA action and a separate case, an action from a junior mortgagee for a suit on note against Mr. Bush. The three actions were consolidated, but they didn't merge on consolidation. When cases merge when they're consolidated, the result is a single lawsuit, whereby the individual identity of the suit evaporates. Even if they merge into one, even if it's in the same lawsuit, if you have multiple theories or multiple claims, that's what 304A talks about, is it not? You have multiple distinct claims, then you get a final ruling, it would be final as to one, but that's only immediately appealable with a 304A finding. So the fact that they're merged is a no-contract. 304A presumes that these are all in one action. Yes, Your Honor. And you have multiple different claims in the same action. Yes, Your Honor. And I'd submit that that is the proper reading of the rules, and even if they did merge on consolidation, you'd still have a final order that doesn't resolve all the claims, so you would need 304A language in each separate order, which, again, didn't happen for any of the orders in the TILA action. And I'd just like to point out that counsel's explanation or attempted explanation as to why the orders from count one of the TILA action are, in his words, before this court for review, it's logically inconsistent and must fail. The supplemental briefing defendant articulated there that he believes count one of the TILA action is actually before this court because he states that orders in the TILA case could potentially impact the plaintiff's lien in the foreclosure action. So he concludes that the orders from the separate TILA action are a procedural step in our foreclosure and that the two cases are intertwined. But he can't draw the line between simply— and conversely, he says that First Midwest Bank's junior lien isn't a procedural step and isn't pulled into this case. So his continued litigation of count two of the TILA action at the circuit court, even after the notice of appeal, he claims that was proper because that lien simply isn't a part of the procedural posture of the plaintiff's foreclosure action. But the defendant can't draw the line there as far as what is procedurally part of this foreclosure case. I'd note that in a prior judgment, which again, counsel noted was unwound, unemotionally considered, but there was a prior adjudication of First Midwest Bank's lien validity and the amount. So in a very real sense, First Midwest Bank's lien is being adjudicated in this foreclosure case. So the defendant can't merely say, well, count one of the TILA action has to do with plaintiff's lien and count two of the TILA action has to do with First Midwest Bank. So count one is before this tribunal, whereas count two is before the circuit court. It's an all or nothing proposition. Either the entirety of the TILA case was pulled into this court under defendant's own explanation, or the more likely result is the TILA case in its entirety remained before the circuit court. And so the continued litigation or the briefing and the argument about the TILA case before this tribunal wasn't proper. Additionally, more broadly, the orders in the TILA action aren't a procedural step in this foreclosure action merely because under counsel's argument they could potentially impact each other. The very notion of res judicata and collateral estoppel is premised on the notion that a ruling in one action, a final ruling on the merits, can potentially impact other similar types of future litigation. So here, defendant was precluded from raising the TILA issues in this case when Judge Siegel denied the motion to amend. Facing that, defendant voluntarily went out and raised the same issues in a separate lawsuit. When he did that, he introduced the possibility that the orders from the foreclosure action, if final and on the merits, could potentially impact relief or orders available in the separate TILA action. But merely because that's the case doesn't mean that the separate TILA orders are a procedural step in this foreclosure. Additionally, if this court does review those orders from the separate TILA action, it would eviscerate Judge Siegel's authority and discretion to control his own docket. Defendant admits that the TILA action represents what he would have filed in this case had he not been precluded. And so to hold that the TILA orders are now part of this action, this foreclosure action, would make the denial of the motion to amend by Judge Siegel meaningless. This court would necessarily review the exact same issues, again as part of the separate TILA action, under a totally different standard of review. He would get to avoid the review of the denial of the motion for leave to amend, which would carry an abuse of discretion. And instead, he would have this court review the various orders entered in the TILA action, which would carry a de novo standard because of the dismissal of a TILA action. All right. So why should you pass summary judgment in this case? Your Honor, we should— We'll talk about the case that is before us in your position. Certainly, Your Honor. Summary judgment was proper here because the affidavits in support of the plaintiff's motion had sufficient foundation laid for the business records attached to the respective affidavit. Defendant overwhelmingly tried to resist summary judgment by arguing that the affidavits were insufficient, that they didn't properly lay foundation. But each affidavit properly laid foundation— again, the recent land case that I cited in my motion to cite to additional authority— should be informative here. There, the court found that the affidavits properly laid foundation for the business records because they stated they were familiar with the business and its mode of operation and that they were personally familiar with the record-keeping procedures and the entries were made at or near the time of the occurrence by a person with knowledge. And the court there held that the affidavits sufficiently laid foundation under Rule 236 and that it provided a sufficient basis for summary judgment. Were you asking Discovery to identify people with knowledge of relevant facts or documents? Your Honor, yes. I believe that certain Discovery requests from the Defendant's counsel went toward identifying people who had knowledge of the loan or certain aspects of the case. Did you disclose these affidavits? Our responses, Your Honor, to the Discovery requests were we gave information where we could, but they were predominantly objective to the Discovery requests. And again, I think the Defendant kind of alluded to this in his opening statement, but I do believe it's significant here that the Defendant propounded Discovery. We answered. At summary judgment, the Defendant didn't bring a motion to compel, didn't bring a motion for any ruling on our objections to various Discovery requests. Instead, he simply attached the Discovery request with a single 201K letter and argued that this was improper and that summary judgment should be denied as a result of that. What significantly he didn't bring was a Rule 191B affidavit. Well, okay, so my question was did you identify the affidavits in response to Discovery requests? Your Honor, I'm not certain. I don't believe that we specifically named an individual. But again, in the notice that was given to the Defendant for the summary judgment hearing, he would have had the affidavit on file. So if it had been his desire to depose that person in the run-up to summary judgment, again, he could have sent out a proper notice of deposition, which he didn't do. Did he ask for a continuance? I'm not certain if he specifically asked for a continuance on the date of hearing, Your Honor. But again, importantly, aside from attaching the Discovery and the 201K letter to the motion for summary judgment, he responded to the motion on its merits. He made several arguments for why our affidavits in support. And again, not moving to depose these people, but he instead argued on the merits that these affidavits were not sufficient, that foundation wasn't properly laid. But did he move to strike him for failure to identify these people in Discovery responses? I don't believe that the specific request was ever made. It certainly wasn't via a separate motion, Your Honor, that our affidavit should be stricter. I don't know if it was. He certainly made the argument in response to our motion for summary judgment that the affidavit should be disregarded because proper foundation wasn't laid for the business records. I used to be a real lawyer, and generally when somebody sends out a Discovery request and asks about people with knowledge, and you're going to use somebody to bounce somebody's case on summary judgment, normally one would identify that person as knowing that the other side might be keenly interested in that person's identity if they're going to support the basis for having your case tossed out on summary judgment. Well, and again, Your Honor, it's not as if he made 213F requests that simply were ignored and we went to trial and we tried to sneak a witness in that was otherwise undisclosed. This was a motion for summary judgment. And again, the identity of the affidavits who we were going to use to rely on the motion was clearly of the record, and if it was his desire to depose these people or otherwise question them about their knowledge or their ability to lay foundation for the business records, then he could have done so. I'd also note that these aren't occurrence witnesses in the sense that they have some special knowledge about this case that other employees familiar with Plaintiff's business records wouldn't have. Whose business records? Central Mortgage Company, Your Honor, the Plaintiff. Okay. And so the affidavit really came into play at the time we were moving for summary judgment. It could have been any number of employees with similar experience and similar knowledge of the business record procedures. Well, obviously it was somebody knowledgeable enough to get done what needed to get done to get summary judgment, and like I said, I think reasonable lawyers would assume the other side would want to know who that person was. Some of the discovery requests went to the computer programs and the reliability of those programs, correct? I believe some did, Your Honor. In Central Bank or MERS? I mean, their whole business is all electronic recording of these foreclosures, so why wouldn't he be entitled to check the software? Well, Your Honor, as we argued in our briefs, the request the defendant made regarding the computer system and the specifics regarding that, we believe is hyper-technical under Rule 236. We're laying a sufficient foundation for the business records to come in. Okay, I understand. I mean, like Justice Schmidt, I too had a former life, and I sat in court when Cadillac and Associates brings these foreclosure actions, and it's kind of a foreclosure freighter train that takes over, and once the proceeding starts, boy, it's hard to stop it. You prepared the complaint in this case, correct? Yes, Your Honor. And you told me that the note was open, what was used? It bore a blank endorsement. A blank endorsement? Yes. Would you recognize? I mean, I've got the note here. I don't see a blank endorsement. Can I hand it to you? Yes, Your Honor. Tell me, maybe I'm missing a page, but what does the blank endorsement look like? Oh, without recourse. Okay, all right. Page the order of, and then no specific payee name, so page the order of blank, Taylor, Bean, and Whitaker. That's the blank endorsement that occurs on page three of the note. Okay, and what date was that signed? Your Honor, under the UCC, it's overwhelming that endorsements are not dated. So you can't tell whether it was signed that day when Mr. Bush borrowed $417,000 or whether it was done years later? The record wouldn't bear that. We don't even know if this was endorsed in blank after the assignment or before the assignment to Central Bank, and that's the way, I mean, this is just the way things happen? Well, Your Honor, I guess, and again, this gets really more into standing issues. I know. Okay, but to answer Your Honor's question. How did you survive summary judgment on standing? Because I don't think it was admitted. That standing wasn't admitted by Mr. Bush's answer. Right. Your Honor, we survived summary judgment as to standing because the case law is quite clear. There's a distinction between notes and any endorsements on notes and recorded assignments in Illinois. Recorded assignments in Illinois are notice documents. They're recorded so you put third-party creditors on notice that if you're seeking to affect the interest in the property, this is who you notify. It prevents someone who has an interest in the property, potential interest in the property from being foreclosed when notice went to their predecessor. So the most recent case laws bore that out, that the important thing in establishing standing is the attachment of the note. And you have a recent case law out of the First District, and again, Parkway Bankers Association. Okay, so this note is endorsed in blank. What gives Central Bank standing? The fact that it's endorsed in blank, Your Honor. It's bearer paper and it's payable. The holder of the note would be any person who possesses it. And who possessed it? Well, Your Honor, Central Mortgage Company, in this case, was both the holder and the servicer of Subject 1. Okay. It seems kind of fast and furious to me, but maybe I'm just old. I'm sorry, Your Honor, if it feels that way. But again, if the Corzine and the Rosedome case are both quite clear that a plaintiff's prima facie showing of standing foreclosed is met, when they simply attach a copy of the note to the complaint, that makes their prima facie showing, and that further, a blank endorsement, on a note, would convert the instrument to bearer paper, which would, again, further establish that this bank, the plaintiff, had some interest in the note that would give it standing to foreclose. Your Honor, if I could just briefly respond to the defendant's argument about the impropriety of Judge Siegel's denying the motion to amend. I believe the Johnson v. Abbott case that I cited should be very informative here. There, the court looked at prior opportunities to amend, timeliness, whether or not matters were known to the pleader at the time of the original filing, and, importantly, whether or not good cause was shown. The court stated there's no apparent reason, and defendants suggest not, why this defense couldn't be brought in earlier part of proceeding. Here, the defendant, he brought two motions for extension of time. The second one came six months into the case. At the time he was asking for an amendment, he was complaining of things three years old at the time he was asking for the amendment. And, importantly, at the hearing for the motion for leave to file the amended pleading, counsel acknowledged that they couldn't explain they had no response to why the defendant didn't timely file the defense himself. And so they admitted, they acknowledged that they couldn't show good cause. And, again, Your Honor, very briefly, regarding the entry of summary judgment and defendant's attack on the foundation of these affidavits. Again, we met our burden under Rule 236. I'd also bring up the Grandlicker case cited by defendant. I believe that Supreme Court case from 1977 should be limited to the facts of that specific case and the technology it's describing. They're describing key-punched data cards that are run through an automated computer system where there's an error in both the translation from the source documents, the books, to the key-punched card, and in the processing of the computer itself. In fact, in Grandlicker, the tax auditor laying foundation for the computer printout admitted he didn't know what information was fed into the computer to end up with the computer printout. And so there was a concern espoused by the court that there'd be a mistranslation from the source documents to the key-punched card, which was the format that the computer read at the time. And, again, in the wake of Grandlicker, cases analyzing it explicitly say, and this is Bovio in the Friedland case, that the use of a monitor and a visual display and a keyboard is more error-free than a system that just uses key-punched cards. So to the extent that counsel is trying to rely on Grandlicker to try and graft on additional foundational requirements for business records in Illinois, I don't believe that can be done generally, but the Grandlicker case, if it still has any viability, should be limited to its facts. And I'd also note that it's incompatible with the recently codified rule of evidence 8036. For the foregoing reasons, I believe that the orders from Judge Siegel should be affirmed. Thank you. Okay, another stupid question from the dumb judge, but if this note was endorsed in blank on the day the loan went through, who does he give the notice to rescind to? Well, Your Honor, and again, I wouldn't think... How does he know who's holding the note? And, again, Your Honor, the record certainly wouldn't bear out when that endorsement takes place, but it was attached to the complaint note, so I don't believe there's any standing issues here. Regarding the specific TILA question, the... All right, dumb question. I apologize, but how hard is it to put a date on that? Again, Your Honor, under the UCC, it's just not commonly done. It's akin to signing the back of a check. It's just not dated. Overwhelmingly, you don't find dates on endorsements. I guess I don't loan $400,000 here and there, and it just seems to me to be a very dangerous practice without a date. So thank you for answering my question. Yes, Your Honor. Thank you. Mr. Brooks. Yes, and thank you for hearing me one more time. I've got just a couple of points. I think I'd like to kind of start off with some of the last points actually made by Mr. Minetti and actually addressing how the issue of summary judgment was awarded when there was no evidence in front of the court of central mortgage's capacity. Picking up on that point, paragraph 3N of their complaint has a legal conclusion alleged, which is that the plaintiff is the mortgagee under 735 ILCS 5-15-1208. Well, that's just a legal conclusion because the word mortgagee... They don't hold the debt. That statute defines the mortgagee as the holder of the debt. I'm sorry to interrupt. Your Honor is going directly where I was headed. The statute lays out a definition of mortgagee, one of which is the holder of the debt. So what we have here in their complaint is no fact alleged as to what their capacity is. It basically just says, well, we're something under the statute, but the statute has alternatives. So we don't have a fact that gives us any information as to why central mortgage brought this foreclosure. And going to Justice Smith's point, my client denied that allegation. This is without my proposed pleading. His answer, the one that's of record, denied that allegation. As a result of summary judgment, the burden was on central mortgage to prove it. They did not. There was nothing in their affidavits, and to the extent there was any comment about where the note might have been, it was inside those affidavits, which we, in fact, did ask the court to strike. Well, let's go to those affidavits. We're talking about the discovery. You sent discovery requests. But this motion for summary judgment wasn't served on you on the day of the hearing, right? You got it in the mail ahead of time. So those affidavits were attached to the motion for summary judgment. I believe they were. So then did you go to the court and say, hey, I need to depose these folks before the summary judgment because they weren't previously identified? I didn't do exactly that, but here's what did happen. That motion was presented to the court, and the court provided a briefing schedule. In our response brief, in our brief for objections, our objection, one of the central objections made was these witnesses were not previously disclosed, and that is why the discovery responses were attached, because we were providing them as evidence to the court. And in my judgment, I think it's important to look at the timing here. This motion for summary judgment was presented to the court right after we received the discovery responses. So there wasn't some passage of time where we sat on all of these affidavits and we just didn't seek to do anything. No, in fact, the record bears out that immediately upon getting this, realizing that now we're going to be asked to respond to motion for summary judgment with brand new witnesses, and the witnesses declaring in their affidavits that all of their testimonies relied on business records, when clearly some of the testimony, for instance, the stuff about the computer reliability and software, there are no documents attached to this motion that relate to that. So if the witnesses are being truthful, that means there are other documents that they relied on that were not attached. That's a Rule 191 violation of itself. You do not have the affidavits in the motion for summary judgment. You have people named, but you didn't ask to take their deposition. You didn't ask for a continuity. No, what we did, we objected to it, specifically asked the trial court to strike them, and if I'm not mistaken, that same page, and I can give you the page in the record, it's page 524, I believe, which is where our objection and request to strike these affidavits is found. We did, in fact, ask the court, if you're not going to strike the affidavits, then we should have been given time to obtain the additional information. That also occurred at the actual hearing for the motion for summary judgment, which the transcript is in the record as well. Did you ask for additional time? We did. Both in that response, the written objection, and in front of the trial court, I think there it was just lost on the trial court somehow that this was kind of a bang, bang, bang. What exact language did you use to say you want additional time? Your Honor, I don't have the written objection in front of me, but I did review it before I appeared this morning, and I do recall us asking in the alternative to objecting, in the sense of having them stricken, that we should be then given time to do the follow-up discovery, which would have included the depositions of these new witnesses. Was that argued to the judge? It was, and it's also in the report of proceedings. This was done not only in writing, but at the physical hearing. We again raised the objection that they're getting to use these witnesses, which is kind of a two-fold problem. They not only identified witnesses in these affidavits that they didn't give us, but then the witnesses are apparently relying on documents that Central Mortgage tells us, and their discovery responses are irrelevant. When we asked about the computer records, they go, oh, that's not relevant. But in the course of litigation, one would normally say, okay, judge, I want to talk to that person, I want to get them in, I want to get them on the hot lights and find out what's going on. Absolutely. But in other words, if they had supplemented their interrogatory answers, you knew that these people were going to use their affidavits. So now they supplement their interrogatory answer and say, what? These people are going to talk about our records. Well, you already knew that from the affidavit, so form over substance. They should have answered it, but you could have said, judge, I want to call the other side, I want to depose these people, or I need extra time, file a motion, whatever it is, and the other side won't produce them voluntarily. You go to court, you say, judge, make them produce them. Absolutely. I apologize for cutting you off, Justice. But that happens here. There in the record is our Rule 201K conference letter. It's four pages long, objecting to what they did with the discovery responses in light of the motion for summary judgment. The problem, again, here is time. But your objection was that they didn't disclose it before, and that they're disclosing it now in the summary judgment. Correct. That's different from saying, I want to depose these people. Yes and no, Justice, if I may. Part of the issue here was Natalie was clear that there were also other documents that were being withheld. We were seeking this information. So we needed them to supplement their response. It wasn't just a matter of tell us the name. There also now is a matter of the subject matter that these people were supposedly aware of and the documentation that they're relying on that isn't attached to the motion. We bring all of this to Judge Siegel's attention at the hearing. But, again, I think it was lost on the trial court of how sequential these things happened. All of this happened within a couple of weeks. So there was not time for a separate motion to compel. We then opted for we had time to file an objection. We did so. The objection specifically asked that because of the Rule 213 violation that these affidavits be stricken or in the alternative that we then be given time to follow up. So it wasn't as if, again, some of these cases that the counsel relies on. Months or years go by with people sitting on these discovery problems.  The discovery went out the door. It was responded to just days before they then filed their motion for summary judgment, which then only gave us days to deal with it. We wrote the 201-K letter. We got the briefing schedule. We object to the use of the witnesses. The trial court overrules them. So there was not a lot of time here that passed that we sat on this. This was something we actively pursued with the trial court, but the trial court chose to ignore it at the time. And moving on then to my next point, the scope of this appeal is obviously an important issue, and I think I can address this quickly. The issue here seems to be what is before the court. And I believe that the separate TILA action, at least count one of it, and I shouldn't say at least, I explicitly only count one of it, is before this court, and here's why. Because the TILA action was consolidated into, and the court orders from the trial court make it clear, this was consolidated into. They aren't transferred as related. They're now consolidated as one. The trial court's orders make that clear. And now, as a result of that, we believe the Rule 304A language for the foreclosure judgment brings before you the TILA action. Well, 304A talks about, and by its very nature, deals with multiple claims within a single action or lawsuit. And 304A, by its very term, says when you've got a judgment that's final as to one but not all, that's only appealable with a 304A, appealable immediately with a 304A finding by the court, no just reason to delay enforcement or appeal. And so the fact that they're consolidated into one is, that raises a big legal so what. Because then it just puts them as if they were all filed together, and you would still have separate claims within a single action, and yet only a 304A finding on the summary judgment issue. Well, I agree with you, Your Honor, that the consolidation by itself does not win me anything. But it's the first brick, because without that consolidation, there would be, this question wouldn't be here at all. But the consolidation lays the first brick. The reason why I think we get all the way to this court having jurisdiction over that account is because the next thing that we know is the TILA rulings become a procedural step to the granting of summary judgment. Why is that? Because of the specific nature of the TILA rescission itself. The TILA rescission would have invalidated and voided the mortgage. In fact, my client's position is, he notified Central Mortgage that he wanted to rescind it under TILA. The mortgage lien is now void. In order for the trial court to have granted that summary judgment to Central Mortgage, it had to dispose of the TILA claim first. Okay, but you brought this under 304A, which is interlocutory appeal, and it seems that you had two choices. Get a 304A on the TILA, which I think you asked for and the judge denied. Correct. Or wait until you've got TILA resolved, that part of the claim resolved, and then everything is final and bring an appeal on a final judgment as to all claims. But the trial court did not do that. The trial court actually set forth a slightly different route. It did initially deny my request for 304A language, but I think if you look at the record, it becomes clear why that happened. Because the foreclosure was not complete. So the dispute over the mortgage was not complete. Once Central Mortgage obtained summary judgment, now the dispute over the mortgage was complete, which included his decision that my client was not entitled to rescind that mortgage. As a result, when he sent up the judgment of foreclosure, it took with it his rulings that that mortgage was valid. And I think that's the key here. The fact that his summary judgment now, I guess that's the appropriate term to use right now, is validated at the mortgage, that meant that my client's request to invalidate or avoid that mortgage because of the rescission goes along with it. This court, I think it would put us in a very difficult position if that's not the case. Well, did your argument then that the summary judgment rendered his orders on the TILA final? Correct. Well, they were already final. The question becomes now, are they appealable? I think the 304A language made them now appealable because there was nowhere else left to run. I mean, if that's the case, you've got final orders on the only two issues there, so then it's not a 304A appeal at all. It's not an interlocutory. If you're saying everything's done, nothing left to do below? And again, I apologize for continuing to cut you off there. But the reason why it's 304A is because, one, the foreclosure is not 100% completed. There's no sale. There's no confirmation sale. I think even a brief review of case law is going to tell you that that has to happen. The second issue is the TILA case also involved a second loan from a second lender. Those claims are still running. The only 304A is going to get those separated. So that is why we're here on 304A because there are actually two things running. The mortgage foreclosure case is still running, and so is the TILA case regarding a different loan with a different lender. But 2758 is still ongoing. Correct. And 2758 has two claims. Correct. One with Central Bank, the other one with First Midwest Bank. But that's still going on. Correct, it is. And so is 5616, the mortgage foreclosure. It's still running. So TILA's still alive and well down in the circuit court. With respect to First Midwest Bank. But that case number is still active, yes. And there's been no appeal on the first count. The first count is here. My notice of appeal. 2758. There's been no request for 304A or anything on that first count, 2758. There was an independent request earlier in the case. But that was denied. But that was denied. It's our position, then, with the subsequent 304A ruling by the trial court, after the judgment of foreclosure was entered, now encompass everything on that side of the case. It sucked it in. Correct. Because, as you know, our jurisdiction isn't discretionary with us. We're reminded of that by the Supreme Court every now and again. And so we either have jurisdiction on TILA or we don't. Well, if I could make one point just to clarify. TILA is before this court regardless. And let me just make sure that that's clear. Because of Judge Siegel's ruling refusing to permit that earlier amended pleading, the TILA claims were the counterclaims of that amended pleading. So I think even if this court decided that the rule 304A language did not encompass count one of the 2758 case, you still got to deal with TILA because the court then goes on this, well, was it futile to do the amendment or not? Was it timely or not? So the issues are still here. In the foreclosure action. In the foreclosure action. Affirmative defenses or counterclaims. That is correct. That is correct. And I just want to clarify that point because I don't want the court to think that we were conceding that there was no need to look at TILA if the 304A language didn't bring in the 2728 case. Because it's still there in the foreclosure action. In the amended answer. Correct. The proposed amended answer. So if there are no more questions, I know my time is up. Thank you. All right, thank you. Thank you both for your arguments here today. This matter will be taken under advisement. A written disposition will be issued. And right now we'll be in a brief recess for a panel change before the next case.